IN THE UNITED STATES DISTRICT COURT
FOR THE EASTER DISTRICT OF PENNSYLVANIA

CHARLES BUCCERONI                  : NO.  03-CV-
                                              :
      vs                              :
                                              :
CITY OF PHILADELPHIA, SYLVESTER JOHNSON   :
JOHN NORRIS, WILLIAM SULLIVAN, WILLIAM ANSEL   :
THOMAS MCDEVITT, THOMAS KELLY, CARL LATORRE: 
PAUL MCKELVIE, JOSEPH MAUM, SHAWN TRUSH   :
JOSPEH DELGRIPPO, DENISE GALLAGHER         :
TIMOTHY HANRATTY,JACQUJNE DALEY, BRIAN KORN:
Sued individually and in official capacity,          :
 held liable jointly and severally             : JURY TRIAL  DEMANDED

## **COMPLAINT**

## I. INTRODUCTION

**01.**    This is a civil action brought under 42 USC 1981, and 1983, the United States

Constitution and under the Constitution of the Commonwealth of Pennsylvania and it statutory

provisions. The action seeks compensatory damages, punitive damages and other related relief,

which relief is sought for the deprivations of Charles Bucceroni's constitutional, statutory and

civil rights attendant to his employment as a police officer with the City of Philadelphia.

**02.**    In this action former Police Officer Charles Bucceroni contends that he suffered

retaliation for the exercise of free speech rights protected by the Constitution of the United

States and the Laws of the Commonwealth of Pennsylvania and the United States of America,

including but not limited to reporting believed corrupt and other illegal acts of police in the City of

Philadelphia police Department, including but not limited to an unconstitutional criminal

prosecution and loss of his employment. The aforesaid conduct has proximately caused him the

loss of wages, benefits, promotions, and has subjected him to termination of his employment,

actual bodily injury, risk of death, and emotional and physical distress.

**03.**    Plaintiff Charles Bucceroni contends that the City of Philadelphia, by policy, practice and

custom, punished him as it does other whistle-blowers and  officers who report illegal conduct

that is committed by non- officers. Plaintiff Charles Bucceroni further contends that the City and its Police Department discipline officers in order to chill their exercise of constitutional rights, and that the City and its Police Department has adopted a de facto policy of permitting supervisors to use the internal disciplinary process to retaliate against and harass officers who report illegal conduct of other officers.

**II. JURSIDICTION**

**04.**     Jurisdiction is founded on 28 U.S.C. 1343 (3) and (4), 28 U.S.C 1331 (Federal Question) and 42 U.S.C 1983, et seq., this being an action to redress the deprivation under color of any State law, statue, ordinance, regulation or immunity secured by the Constitution of the United States of America providing for equal rights of all persons within the United States and to recover damages under any Act of Congress providing for the protection of civil rights. Supplemental jurisdiction is invoked to resolve the state constitutional and statutory claims.

**III. VENUE**

**05.**     Venue is proper herein as the cause of action arose in the city of Philadelphia, Pennsylvania. Pursuant to Local Civil Rule 5.1.1 regarding pleading claims for unliquidated damages, as specifically stated herein, plaintiff seeks compensatory and punitive damages in excess of the amount which is within the level of arbitration and as such this matter is not subject to arbitration under Local Civil Rule 53.2.

**IV. PARTIES**

**06.**     Charles Bucceroni, Plaintiff, is a former police officer who was employed with the City of Philadelphia Police Department from 1993 to 2003.  For all times relevant to the cause of action he resided in the City of Philadelphia at an address known to the defendants.

**07.**     All individual defendants are or were at the time of the events set forth in the complaint members of the Philadelphia Police Department. Each defendant holds or held at the times set forth in the complaint a supervisory rank and each was headquartered at the Police Administration Building, 8th and Race in the City of Philadelphia.

**08.**     The City of Philadelphia, Defendant City, is a City of the First Class in the Commonwealth of Pennsylvania, and at all times relevant hereto operated under color of state law in its creating and maintaining a Police Department. Defendant City was the employer of the Plaintiff Charles Bucceroni and Defendants, and it had the responsibility of adopting polices, implementing procedures and practices that would create a non-discriminatory and harassment free work place and/or that would protect police officers from discrimination, unequal treatment, and harassment as prohibited by law, rule, regulation and constitutions of the United States and Commonwealth of Pennsylvania.

**09.**     Sylvester Johnson (Defendant Johnson) is a black male, the Commissioner of the Philadelphia Police Department, and who is the successor to Commissioner John Timoney. Commissioners Johnson is being sued in his official capacity as high policy maker.  At all times relevant hereto, the Commissioner is and was responsible for implementation of overall policy, direction, supervision and policy within the Philadelphia Police Department, including but not limited to determining the existence of any conduct which did or would violate the constitutional rights of police officers and developing and implementing conduct which would prevent and remedy such violations.

**10.**     John Norris, (Defendant Norris) is a white male, who was for all times relevant hereto the Deputy Commissioner of Philadelphia Police Department and Deputy Commissioner of the Internal Affairs Division, which Division investigated and arrested Plaintiff Charles Bucceroni. Defendant Norris was at such time Inspector in Charge of the Internal Affairs Division of the Philadelphia Police Department and as such charged with the direction and operation of that Division, including but not limited to decision of which officers against whom to investigate and prosecute.

**11.**     William Ansel, (Defendant Ansel) Badge No. 8766, is a white male, Lieutenant at the Internal Affairs Division of Philadelphia Police Department and at all times relevant to the period

hereto was responsible for the, arrest, termination and prosecution of Plaintiff Charles Bucceroni and the violations of the plaintiff's constitutional rights, as are more fully set forth below.

12.     Joseph Sullivan (Defendant Sullivan) is a white male employed by the Philadelphia Police Department, who assaulted the Plaintiff and conspired with the aforesaid defendants to violate the plaintiff's constitutional rights residing in the jurisdiction of the United States District Court, Eastern District of Pennsylvania, because Plaintiff had engaged in protected free speech activities.

13.     Thomas McDevitt, (Defendant McDevitt) is a white male employed by the Philadelphia Police Department, assigned badge number 2297, assaulted the Plaintiff and conspired with the aforesaid defendants to violate the plaintiff's constitutional rights residing in the jurisdiction of the United States District Court, Eastern District of Pennsylvania, because Plaintiff had engaged in protected free speech activities.

14.     Thomas Kelly, (Defendant Kelly) is white, a police officer, employed by the Philadelphia Police Department, who assaulted the Plaintiff and conspired with the aforesaid defendants to violate the plaintiff's constitutional rights residing in the jurisdiction of the United States District Court, Eastern District of Pennsylvania, because Plaintiff had engaged in protected free speech activities.

15.     Carl Latorre (Defendant Latorre) is white, a supervisory police officer, employed by the Philadelphia Police Department, assigned badge number 9130, who assaulted the Plaintiff and conspired with the aforesaid defendants to violate the plaintiff's constitutional rights residing in the jurisdiction of the United States District Court, Eastern District of Pennsylvania, because Plaintiff had engaged in protected free speech activities.

16.     Paul  McKelvie (Defendant McKelvie) is white, a supervisory police officer, employed by the Philadelphia Police Department, assigned badge 929, who assaulted the Plaintiff and conspired with the aforesaid defendants to violate the plaintiff's constitutional rights residing in

the jurisdiction of the United States District Court, Eastern District of Pennsylvania, because Plaintiff had engaged in protected free speech activities.

**17.**     Joseph Maum (Defendant Maum) is white, a supervisory police officer, employed by the Philadelphia Police Department, assigned badge number 395, who assaulted the Plaintiff and conspired with the aforesaid defendants to violate the plaintiff's constitutional rights residing in the jurisdiction of the United States District Court, Eastern District of Pennsylvania, because Plaintiff had engaged in protected free speech activities.

**18.**     Joseph Delgrippo (Defendant Delgrippo) is white, a supervisory police officer, employed by the Philadelphia Police Department, Badge number 450, who assaulted the Plaintiff and conspired with the aforesaid defendants to violate the plaintiff's constitutional rights residing in the jurisdiction of the United States District Court, Eastern District of Pennsylvania, because Plaintiff had engaged in protected free speech activities.

**19.**     Denise Gallagher (Defendant Gallagher) is white, a supervisory police officer, employed by the Philadelphia Police Department, assigned badge number 81, who assaulted the Plaintiff and conspired with the aforesaid defendants to violate the plaintiff's constitutional rights residing in the jurisdiction of the United States District Court, Eastern District of Pennsylvania, because Plaintiff had engaged in protected free speech activities.

**20.**     Shawn Trush (Defendant Trush) is white, a supervisory police officer, employed by the Philadelphia Police Department, assigned badge number 139, who assaulted the Plaintiff and conspired with the aforesaid defendants to violate the plaintiff's constitutional rights residing in the jurisdiction of the United States District Court, Eastern District of Pennsylvania, because Plaintiff had engaged in protected free speech activities.

**21.**     Timothy Hanratty (Defendant Hanratty) is white, a supervisory police officer, employed by the Philadelphia Police Department, assigned badge number 4922, who assaulted the Plaintiff and conspired with the aforesaid defendants to violate the plaintiff's constitutional rights

residing in the jurisdiction of the United States District Court, Eastern District of Pennsylvania, because Plaintiff had engaged in protected free speech activities.

**22.** Jacquine Daley (Defendant Daley) is white, a supervisory police officer, employed by the Philadelphia Police Department, assigned badge number 293, who assaulted the Plaintiff and conspired with the aforesaid defendants to violate the plaintiff's constitutional rights residing in the jurisdiction of the United States District Court, Eastern District of Pennsylvania, because Plaintiff had engaged in protected free speech activities.

**23.** Brian Korn (defendant Korn) is white, a supervisory police officer, employed by the Philadelphia Police Department, a Captain, who assaulted the Plaintiff and conspired with the aforesaid defendants to violate the plaintiff's constitutional rights residing in the jurisdiction of the United States District Court, Eastern District of Pennsylvania, because Plaintiff had engaged in protected free speech activities

**24.** At all times relevant hereto all action taken by the City of Philadelphia, Department of Philadelphia Police, and by the defendant employees were done while they acted under color of state law.

**V. MATERIAL FACTS**

**25.** From 1993 to 2003 Plaintiff Charles Bucceroni was successfully employed by the City of Philadelphia, Department of Corrections, with satisfactory evaluations and commendations for his performance, and he was held in the highest regard by his peers and supervisors.

**26.** On or around 1991, Plaintiff Charles Bucceroni applied for a position as a police officer with the City of Philadelphia, Department of Police. He successfully passed all written and, background examinations and psychological reviews; thus, he was selected to attend the City of Philadelphia Police Academy, which in or around 1993 Plaintiff Charles Bucceroni successfully completed and was sworn in as a Philadelphia Police Officer. After his graduation from the Police Academy, Plaintiff Charles Bucceroni was assigned to the 17th Police District.

27.     Plaintiff Charles Bucceroni at all times while an employee successfully completed all his duties as a Philadelphia Police Officer and was given satisfactory evaluations by his supervisors. Plaintiff Charles Bucceroni was also awarded numerous Awards and Commendations for excellent work, including but not limited to being honored by the City Counsel, Police Commissioners John Timoney and Sylvester Johnson, and Mayor John Street.

28.     In or around June 02 and June 7, 2001 Plaintiff answered a radio call for police assistance. The call was from a Ms. Desippio who believed she and he family were victims of racial harassment (ethnic intimidation) by neighbors and 2 white police officers with Philadelphia Police Department. Plaintiff took the information and reported it to detective Gibson. Reported to Det. Gibson was that there were discrepancies in the arrest report of Ms. Desippio.

29.     On or about October 18, 2001 Plaintiff was contacted by Philadelphia Assistant District Attorney Donovan, who asked Plaintiff about the Desippio matter. ADA Donovan was prosecuting Desippio. Plaintiff explained the discrepancies and thereafter was told by ADA Donovan not to appear for the preliminary hearing.

30.     In or around December 6, 2002 and December 9, 2002 Plaintiff Charles Bucceroni reported to public through the press that there was corruption within City police department.

31.     Plaintiff Bucceroni also disclosed to police and the District Attorney's office that there was corruption within the City Police Department and Philadelphia District Attorney's office. In that Plaintiff notified internal affairs about a police officer who was prosecuting a person wrongly. Plaintiff also notified Lynn Abraham that a member of her staff was aiding the police officer by hindering him from testifying from appearing at trial to testify for the accused person who was being wrongly prosecuted by the police office. Plaintiff reported that the District Attorney employee was making threats to have Plaintiff Bucceroni fired if he appeared at trial and testified.

32.     Following the report to IA, Plaintiff Charles Bucceroni was interviewed by IA investigators. Who attempted to dissuade Plaintiff from making a statement against the officer.

**33.**   Following the report to the Philadelphia District Attorney Lynn Abraham did noting to investigate the matter.

**34.**   After Plaintiff made the IA report, complaint to the District Attorney's Office, cooperated in the investigation, and made the public disclosures received an anonymous mailing that warned him he was going to be retaliated against for the disclosures. See Exhibit A, which is incorporated hereto as though stated at length.

**35.**   In or about January 24, 2002 Plaintiff was investigated by Internal Affairs for a "leak to the media" about the Center City Rapist investigation.

**36.**   Plaintiff Charles Bucceroni did aid in the Center City Rape investigation by discovering information about a person of interest in rape case. Plaintiff passed this information on the assigned investigators for the case.

**37.**   On March 11, 2002 Plaintiff Bucceroni appeared at trial for the Desipio case,  at such time Bucceroni was under subpoena, which subpoena was issued by Desipio's attorney.

**38.**   On or about March 11, 2002 Philadelphia Assistant District attorney David Desiderio approached Plaintiff and stated to plaintiff that is he testified he (Bucceroni) would be subject to termination and/or arrest.

**39.**   On or about April 01,  2002 the IA investigation was sustained and Plaintiff was subjected to disciplinary charges, which charges lead to a January 13, 2003 Police Inquiry Board hearing date.

**40.**   On or about June 5, 2002 Defendant Johnson stripped Plaintiff or his police authority.

**41.**   On October 1, 2002 Plaintiff was reinstated to full duty, his police authority restored, and he was transferred to the 6th District.

**42.**   On December 6, 2002 Plaintiff made a pubic statement in the press that there were crooked cops in the Philadelphia Police Department.

**43.**    Plaintiff received an anonymous mailing that warned him he was going to be retaliated against for disclosing the corruption. See Exhibit A, which is incorporated hereto as though stated at length.

**44.**    On or about December 13, 2002 Plaintiff received a telephone call from Capt. Korn, Plaintiff's commanding officer. Capt Korn stated to Plaintiff that he (Korn) and other officials were upset about Plaintiff's public statement in the press about corruption.\

**45.**    On or about December 09, 2002 Plaintiff Charles Bucceroni's police locked locker in the Sixth District Philadelphia Police Department building was subjected to a search. The locker was after being searched and the lock destroyed was relocked with a lock the Plaintiff did not have a key for. Property belonging to the Plaintiff was taken from the secured; to wit, documents belonging to the Plaintiff that concerned believed corruption in the Philadelphian Police Department. The property when taken was not inventoried but nevertheless taken and the property was removed and taken without the consent of the Plaintiff, a warrant signed by a judicial office, or authorization of law.

**46.**    On or about December 16, 2002 Plaintiff reported for duty, was in uniform, had gone to roll call, and was preparing to start patrol of his assigned patrol area when he was commanded to appear in the office of Captain Korn. Plaintiff complied with the order and was informed by Captain Korn that a search of his locker had been conducted.  Plaintiff was informed he was being placed on restricted duty and to hand over his police issued duty weapon. Captain Korn made it clear that he (Korn) and others were very upset about Plaintiff's public statement concerning corruption in the police department.

**47.**    On or about January 13, 2003 Plaintiff Charles Bucceroni was arrested without a warrant on the command of defendant Sullivan.

**48.**    On or about January 13, 2003 defendants repeatedly kicked plaintiff about the body, including but not limited to the head, groin, legs and torso of the Plaintiff's body. Further the defendants violently smashed the Plaintiff's into a cell wall and repeatedly struck Plaintiff in the

head; thus, causing injury to plaintiff's head, eyes, nose, back and other parts of the body. In that, defendant Sullivan pinned the Plaintiff to a wall, repeatedly struck the plaintiff about the head and face, and choked and kicked the Plaintiff. Defendant Sullivan further caused plaintiff to fall to the ground, whereas, Sullivan stuck his finger in Plaintiff's eye; defendant Kelly held the plaintiff's right arm and kicked the plaintiff about the legs and on the right side of the plaintiff's head, doing so while also allowing the remaining defendants assaulted the plaintiff. Defendant Kelly also placed his knee in the center of the Plaintiff's neck and used great force to cause pain. Defendant Trush kicked the plaintiff about the legs and in the groin. Defendants McDevitt, Latorre, McKelvie, Maum, Hanratty, Delgrippo, and Gallagher all struck the plaintiff about the body and prevented Plaintiff form escaping the forceful blows by the remaining defendants. Defendant Daley held Plaintiff's right arm so that Plaintiff could not protect himself; thus, Plaintiff was able to be struck by the other defendants.

49.    Defendant after handcuffing and assaulting the Plaintiff as above described then dragged him down a flight of steps in the Police Administration building, taking plaintiff to the cell area, whereas, once in the cell he was unreasonable, unnecessary and illegally assaulted by Kelly and Latorre. In that Latorre thrust the plaintiff against the cell wall, smashed the plaintiff's head against the cell wall. Defendant Kelly then repeatedly struck the Plaintiff on the side of his body and rib cage area. The Plaintiff at all time of this savage attack was handcuffed with his hands behind his back and unable to protect or defend himself; Plaintiff was thus subjected to an excessive and illegal use of force, and cruel and unusual punishment by defendants  Kelly and Latorre.

50.    On or about January 13, 2003 Plaintiff was taken to the hospital for his injuries. Said treatment was not requested to be provided to the Plaintiff by the assaulting defendant. Instead the medical treatment was obtained from the cell officers who observed the after math and result of defendants Kelly and Latorre's unreasonable use of excessive force or beating upon the Plaintiff.

**51.**    On or about January 13, 2003 Plaintiff was arrested by warrant that was caused to be issued by Defendant Ansel and upon defendant Ansel's false allegations: to wit, the Plaintiff had assaulted Defendant Sullivan.

**52.**    On or about January 13, 2003 Defendant Norris released plaintiff's private and confidential medical records to others, including but not limited to defendant Ansel, Sullivan, and the Press. Further disclosure came form the pres that published and circulated through the Commonwealth and New Jersey the Plaintiff's private medical information.

**53.**    At numerous times after Plaintiffs disclosures to internal affairs and the District Attorney's office he was subjected to hostile actions by other police officers, which were related to the aforementioned Internal Affairs and District Attorney's complaint, which included but not limited to, shunning by other police officers, being shot at or having his vehicle shot at, being subjected to baseless investigations by the Department, being suspended, subjected to psychological evaluations when not needed, being called offensive and derogatory names, such as "asshole, rat" and "snitch", being assaulted and criminally prosecuted on false charges, which charges ended favorably for the Plaintiff in July 2003 when a jury of 12 acquitted the Plaintiff of all charges.

**54.**    Plaintiff was subjected to having his name and reputation degraded by other employees of the Philadelphia Police Department, and such included the allegations that Plaintiff had disclosed confidential police information of a ongoing police investigation, which information was not confidential but made public through a posting at the Ninth District, which posting was open to the public to see and use, and which information was used by the television news stations, such as Channel 10.

**55.**    Defendants subjected Plaintiff to discipline, embarrassment, humiliation, an assault on his person, arrest, firing and criminal prosecution for the allegation he had made and for the false allegations that he had improperly made public disclosure about the Police Department

and a current investigation. Further, such was done against the Plaintiff in conformance to the illegal; policy of Johnson and Norris. In that:

(a) Defendant Johnson fired the Plaintiff for being arrested, and Johnson allowed a prosecution to occur when such prosecution was commenced to retaliate against the protected speech activities of the Plaintiff.

(b) Defendant Sullivan also initiated an offensive physical confrontation with the Plaintiff, assaulted him and then provided false information to defendant Ansel, as did all Defendants, about that altercation.

(c) Defendant Norris allowed an investigation to result in criminal charges, and he allowed evidence of the assault on the Plaintiff to be taken and not recovered; to wit, a video surveillance tape that recorded the assault was taken from the secured police security area within minutes of the assault. And, Defendant Norris was present on the scene with Sullivan at the time the video was taken.

(d) Defendant Ansel filed knowing false charges Against the Plaintiff to aid the remaining defendants, cause the Plaintiff to be fired, and to retaliate against the Plaintiff's for his lawful actions, including but not limited to (i) defending himself from the illegal assault by defendants Sullivan, Daley, Hanratty,  McDevitt, Kelly, Latorre, McKelvie, Maum, Trush, Delgrippo, and Gallagher, and (ii) for making  complains of corruption within the police Department and District Attorney's Office.

**56.**   Upon information and belief the actions against the Plaintiff constituted a pattern of conduct that was well known to and implicitly approved by the highest officials in the Philadelphia Police Department and the City of  Philadelphia, including but not limited to defendants Johnson, Norris, Sullivan, Ansel, Korn, McDevitt, Kelly, Latorre, McKelvie, Maum, Trush, Delgrippo, Gallagher, Hanratty and Daley.

**57.**   Upon information and belief, the City of Philadelphia and the Philadelphia Police Department does not have adequate programs and or policies, and does, by policy, practice

and custom, ignore claims of corrupt and/or discriminatory conduct by officers. Further it does disparately discipline officers in order to chill their exercise of constitutional rights, and further does maliciously uses the criminal process and disciplinary code to retaliate against officers who report illegal conduct by officers.

58.    Upon information and belief, the Defendant City Police Department, City, Johnson and Norris, have adopted or tolerated as an implicit policy or custom of permitting supervisors and members of the internal affairs division, such as Ansel, to use and misuse the internal police department rules and criminal penal laws of the Commonwealth of Pennsylvania to silence officers, cause them to lose employment with the City, in retaliate, for lawful and/or protected first amendment activities.

59.    Upon information and belief, Defendant Ansel's charges were timed and brought against Plaintiff to prevent Plaintiff from prosecuting Sullivan and make Plaintiff appear incredible, so the allegations of police corruption would not be reviewed creditably by the public.

60.    Also information and belief, Ansel's affidavit and the arrest of Plaintiff Charles Bucceroni was approved by Defendant Norris who was then acting in his official capacity as Deputy Commissioner of the Internal Affairs Division, and under the policy, custom and practices of Johnson.

61.    Defendant Ansel, Norris and Johnson knew or should have known the charges were false for the video tape showed that Plaintiff was defending himself against the attack initiated by Sullivan.

62.    On January 13, 2003 Plaintiff Charles Bucceroni was arrested for aggravated simple assault and other charges; property of the Plaintiff that was on his person was seized from the Plaintiff and placed into police evidence custody, he was terminated from his employment with the Philadelphia Police Department under a policy of the Defendant City and Johnson to fire an officer who has been arrested, which policy is not applied equally to those who are similarly situated as the plaintiff; in that, other officers who have been charged and arrested for assault

have not been fired but have been allowed to remain a police officer and perform the duties of a Philadelphia City Police Officer.

63.    On or about September 11, 2003 Plaintiff tried to recover his property from the City Police Department evidence room. Plaintiff was refused his request to recover his property, although the property is not evidence or contraband, and despite the Plaintiff complying with all police requirements to recovery his property.

64.    Upon information and belief the arrest, prosecution, refusal to return his property belonging to Plaintiff Charles Bucceroni, and the subsequent termination were not brought in good faith, lack probable cause, was maliciously commenced for a purpose not intended for the criminal process, to discriminate against Plaintiff because of his protected activities; to wit, reporting corruption, exercising his right to a jury trial, which jury trial resulted in an acquittal, and in retaliation for Charles Bucceroni's first amendment activity of reporting corruption and illegal conduct by a Philadelphia police officer, to Internal Affairs.

65.    Upon further belief and information, Ansel's actions, were done in concert with defendants Johnson, Norris, and others unknown at this time, under a policy, practice and custom to retaliatory and maliciously prosecute officers for lawful and protected conduct, and to discriminate against officers in terms and conditions of their employment.

66.    As a direct and proximate result of the aforementioned actions, the plaintiff has lost employment (property) wages, benefits, privileges and right to a good name, his reputation (liberty) and been placed under considerable distress that has necessitated medical treatment, and which is extreme and outrageous conduct.

67.    As a direct and proximate result of the aforementioned actions, the plaintiff's reputation and his career within the Philadelphia Police Department has been adversely affected, since his peers and supervisors now view him as a person who has discipline or supervision problems and an officer who has violated the unstated "code of silence" for the Police Department.

68.     As a result of the aforesaid actions and other culpable acts of the defendants, plaintiff has suffered, and will continue to suffer, economic loss, including lost wages, benefits and other work related emoluments, as well as other damages described in this complaint.

69.     Upon information and belief, the City of Philadelphia and the Philadelphia Police Department does not have adequate programs and or policies and by policy, practice and custom ignores claims of discriminatory conduct by  officers, disparately disciplines  officers in order to chill their exercise of constitutional rights and has adopted or has tolerated an implicit policy or custom permitting supervisors to use the internal disciplinary process to retaliate against and harass  and white officers who protest illegal police department actions.

70.     At all times relevant hereto, the City of Philadelphia and Philadelphia Police Department acted with deliberate or reckless indifference, callous disregard, or in an arbitrary and abusive manner as to shock the conscience.

71.     At all times relevant hereto all actions taken by defendants against the plaintiff were performed under color of state law.

72.     At all time relevant to this cause of action, the defendants acted intentionally, negligently, gross negligently, recklessly, purposefully, maliciously, with evil intent, malice, evil and depraved hearts, in and with reckless and/or deliberate indifference to the truth or falsity of the matter, or for Plaintiff's state and federal constitutional rights, privileges and immunities, civil rights, and rights as secured under federal and State statutory and constitutional laws, rule and regulations.

73.     The defendants actions were at all times contrary to clearly established law, and done under an illegal policy, practice, custom and agreement, for the design, intent and purpose to harm the plaintiff and deprive him and officers under color of state law of civil rights and right to property, due process, liberty, equal protection of law, and reputation, as secured under the First, Fourth, Ninth and Fourteenth Amendments of the United States Constitution, and under Article I sections: 1, (property, liberty, equal rights, reputation, happiness) 7, (speech) 8, (false

arrest/unreasonable seizure) 26 (discriminate in exercise of civil right) of the Pennsylvania

Constitution.

**COUNT I**
**Charles Bucceroni v. City of Philadelphia, Police Department**
**1983 Monell**

   **74.**    Plaintiff repeats paragraphs 1 through 73 herein and as though set forth at length, and

alleges that the conduct of the defendants were continuing conduct done in to achieve a

common plan, agreed by word or deed, between one or more of the defendants, who were

acting for themselves, others, and under a police custom, practice of the City of Philadelphia

and/or its police department that designed and intended to discriminate against officers in

employment and retaliate against officers for engaging in law and/or protected activities,

including but limited to free speech.

   **75.**    At all times relevant to these causes of action the Defendants acted without probable

cause, consent of the Plaintiff, privilege or right of law, in bad faith, outrageously, with race

being the primary basis for the actions, and/or with notice or constructive notice of the illegality

as of their acts, as have been and more fully described.  Further they acted with specific intent

to deny civil and constitutional rights, such as but not limited to equal employment.  The

defendants discriminated against Plaintiff based on race, and/or retaliated against the Plaintiff

for lawful and constitutionally protected activities.

   **76.**    Defendant City of Philadelphia Police Department was Plaintiff's employer and person

as defined under 42 USC 1983 et seq., and related Amendments to the 1952 Civil Rights Act.

   **77.**    Plaintiff after reporting illegal conduct of a white police officer to the employer, through its

Internal Affairs Division, was retaliated against because of his race, and such retaliation and

discrimination was by supervisory and management personnel, such as Commission Johnson,

Deputy Commission Norris, Lt. Ansel, Capt. Korn and Lt. Ansel, who for the defendant

employer, City of Philadelphia Police Department,  allowed, aided and/or furthered the City's illegal policies, procedures and customs to continue.

**78.**    Defendants Johnson, Norris, Korn and Ansel, through their acts, and/or omission, as were more fully described above, entered into an illegal agreement with one another to deprive Plaintiff of the terms and conditions of his employment.

**79.**    Specifically, Defendant Johnson approved of, condoned, and/or ratified Sullivan's, Korn's. And Ansel's actions as his own, knowing or should have known that they misused their position and authority; unreasonably search and seized the Plaintiff locker and person, kept property and refused to return such, malicious filed and prosecuted Plaintiff; abuse the use of criminal process, fabricated facts to procure an arrest warrant, had Plaintiff arrest without a reasonable basis to belief there was criminal wrongdoing by Plaintiff, and cause Plaintiff to be fired from his job when Plaintiff had not been engaged in illegal or wrongful conduct, but had engaged only in lawful and constitutionally protected free speech activities.

**80.**    Defendant Norris approved of, condoned, and/or ratified Korn's and Ansel's actions as his own, knowing or should have known that Ansel misused his position and authority; malicious filed and prosecuted Plaintiff; abuse the use of criminal process, fabricated facts to procure an arrest warrant, had Plaintiff arrest without a reasonable basis to belief there was criminal wrongdoing by Plaintiff and cause Plaintiff to be fired from his job when Plaintiff had not been engaged in illegal or wrongful conduct, but had engaged only in lawful and constitutionally protected free speech activities. Further, Norris ratified the search of plaintiff's locker by Capt. Korn and an unknown IA officer, which search resulted in property about corruption being taken, not inventoried or returned to the plaintiff, and which was neither evidence of a crime or contraband, or such that was subject to seizure but property taken without a valid search warrant, consent of the Plaintiff, authority of law, or reasonably.

**81.**    Defendants Johnson, Ansel, Korn, and Norris while acting pursuant to the illegal practice, custom and policy of the City Police Department, did as follows:

a. misuse police rules and regulations to conduct and expand a baseless internal investigations, used other police officers to facilitate and expand the retaliatory and discriminatory investigation by conducting an illegal search, when these defendants knew or should have known there is no proper basis to conduct the investigation and search.

b. Ansel brought false charges, caused Plaintiff to be falsely arrest, fired, and maliciously prosecuted.

c. Ansel use of the criminal process for a purpose not designed, namely, to retaliate against Plaintiff because of his race, and discriminate against plaintiff because of his race.

d. Ansel, used and abused the criminal process against Plaintiff when Ansel knew or should have known that the Plaintiff had not engaged in criminal conduct occurred and there is no probable cause or reasonable basis to believe the plaintiff was engaged in criminal conduct.

e. Ansel brought criminal process against Plaintiff to discredit him and prevent him from providing truth information about corrupt police officers, and Ansel  brought criminal process against the plaintiff to punish him and have him labeled as a disgruntle and bad police officer for Plaintiff's reporting corruption in the City Police Department and District Attorney's Office.

**82.**    Defendants Johnson and Norris did not take prompt and appropriate action to stop Ansel, nor did they take any action to punish these defendants for the above described actions. More so, Johnson and/or Norris took no action against Ansel even after Plaintiff Charles Bucceroni was acquitted on the false charges. Instead, Johnson and Norris allowed Ansel, Korn, and Sullivan, as too the other defendant officers, to remain in their positions so they could continue to aid, facilitate, and/or further the illegal employment practices as have been more fully explained already.

**83.**    The Defendants acts, and the employer's employment practices, policies and customs subjected Plaintiff to a course of conduct which denied Plaintiff of equal treatment in the terms and conditions of his employment and is prohibited under 42 USC 2000e, et seq.

**84.**    Plaintiff believes and therefore avers such treatment was intended to intimidate, retaliate and/or subject the Plaintiff to unequally treat him, for an illegal purpose, in the terms and conditions of his employment, or to continue the illegal policy, custom and practices afore-described.

**85.**    Plaintiff believes and therefore avers the aforementioned conduct as described above and in the agency complaints (hereto incorporated by reference and as though fully stated) was done to discriminate, retaliate, and created a hostile work environment, so as to force the Plaintiff to leave his employment and thus silence him (or chill his first amendment rights to free speech) for speaking out about police corruption in the City Police Department.

**86.**    Defendant City was on actual and/or constructive notice of the reported discriminatory and illegal conduct of its employees, managers and supervisors; yet, and despite numerous complaints failed to take prompt and appropriate action to  stop the offensive, discriminatory, illegal and retaliatory conduct. In that the City has been held to have violated police officers first amendment right through same or substantially similar conduct as has been described by the Plaintiff herein.

**87.**    The Defendants conduct as describe above is an unlawful practice, which Defendant City Police Department was aware and failed or refused to correct. In that Police Commissioner John Timoney did such against an officer Dooley and Timoney was not discharged. Further Defendant Norris with former police Commissioner Timoney did such to Officer John Devore and Norris was not dismissed or disciplined by Johnson.

**88.**    The Defendants' retaliatory and discriminator conduct against the Plaintiff with respect to his equal treatment, right to be free form unreasonable search and seizure of his person and property (locker and evidence of corruption), compensation, terms, conditions, or privileges of

employment,) was done because of Plaintiff's protected activities; thereby causing disparate retaliatory, and unequal treatment for lawfully exercising free speech rights.

89.  Plaintiff is a member of a protected class, a person making a pubic and private statement on a public concern, to wit; official corruption in the government, he was qualified for the position he held; to wit, police patrol officer, and he was denied employment and equal terms and conditions of employment because of his activities of the protected class. In that he was fired for conduct others not in his protected class were allowed to perform or were treated more favorably.

90.  Plaintiff was subjected to retaliation, a hostile work environment, and loss of employment as a result of the intentional discrimination of the defendants who at all times retaliating for the Plaintiff engaging in protected activities.

91.  Defendant City of Philadelphia is liable for the acts of defendants Johnson, Norris, and Sullivan for they are all management and/or policy making level employees, with actual or constructive knowledge about the existence of the retaliatory conduct as aforementioned, but who failed to take prompt and adequate remedial action to stop the retaliatory actins, thus adopting the conduct as a policy of the employer and terms and conditions of employment for the plaintiff.

92.  The acts of the defendants, as fully described above, were done because of Plaintiff protected activities and/or fee speech on a public concern; to wit, corruption within the police department. Plaintiff's speech activities were a motivating and/or substantial factor in their taking the action that was taken or for their omitting to act when required by law.

## Count II
### Title 42 Sec. 1981 Civil Rights

93.  Plaintiff incorporates paragraphs 71 through 92 herein and as though fully stated at length.

**94.**    On or about January 13, 2003 the Defendants  while acting under color of state law deprived the plaintiff of rights, privileges or immunities secured by the Constitution, Laws or Regulations of the United States, to which free speech, unreasonable seizure, substantive due process, procedural due process, property, liberty, equal protection of law, and reputation as secured by the First, Fourth, Ninth and Fourteenth Amendment of the United States Constitution.

**95.**    Plaintiff at all times relevant hereto enjoyed the right to continual employment as a police office, his employment was a recognized property interest, as was his pay, and Plaintiff could not be fired without good cause being proven and procedural due process provided him.

**96.**    Plaintiff was fired without good cause or valid procedural due process being provided him. In that, Plaintiff was fired on false accusation of defendant Ansel, and such allegations Plaintiff was acquitted of by a jury, who determined Ansel had filed the false charges for illegal discriminatory and retaliatory reasons.

**97.**    Defendant Johnson and Norris sanctioned, approved and ratified Ansel's false accusations and then suspended and fired Plaintiff without offering him the opportunity to respond pre discipline to the alleged rule violation.

**98.**    As a direct and proximate result of the defendants' illegal acts and omission, which were done under color of state law, Plaintiff lost his good name, reputation in the police community, liberty, and property. Plaintiff suffered loss of employment and health, and such suffering and loss continues to date.

**99.**    Plaintiff is entitled to relief for the defendants above describe acts and omission under 42 U.S.C. 1981, 1983, 1985 and 1988 and entitled to be reinstated to his position with the police department. Plaintiff is entitled to his police department and criminal record being expunged of the wrongful, retaliatory and discriminatory arrest and termination, and Plaintiff is entitled to recover his lost wages, and be awarded unliqudated, consequential, exemplary, nominal and/or

punitive damages, plus reasonable attorney fees and costs of litigation for the illegal discriminatory conduct of the defendants.

**100.**   As a direct and proximate cause of the aforesaid violation of these rights, the plaintiff sustained severe and emotional distress, humiliation, pain and suffering, all of which may be permanent.

## COUNT III
## 42 U.S.C. 1983

**101.**   Plaintiff repeats paragraphs 93 through 100 herein as though set forth at length.

**102.**   For the conduct and omission describe above, done under color of state law, which deprived Plaintiff of federal rights, privileges and immunities as secured by the United States Constitution and thus entitle Plaintiff to relief under 42 U.S.C. 1983 for a deprivation of his First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments rights to be free from retaliation for engaging in free speech activities, being subjected to an unreasonable seizure of his person, being deprived of his property without due process and/or reasonable compensation, cruel and usual punishment, malicious and/or abusive prosecution; whereas there is no probable cause, and being subjected to the use of excessive force during his arrest and detention, and unequal treatment of law but not being reinstated after his acquittal and being fired for being arrested for assault when other officers have not been fired who were arrested for assault.

## Count IV
## Title 42 sec. 1985  Civil Rights
## (conspiracy)

**103.**   Plaintiff incorporates paragraphs 1 through 102 herein and as though fully stated at length.

**104.**   The defendants collectively, by agreement, and/or for a common goal, took overt acts to put into motion a plan designed to deprive plaintiff of his liberty reputation, property, substantive due process and equal protection rights.

105.   Defendants Ansel, Johnson, and Norris on or about the time of the conspiracy, agreed with one another that one or more of them would use their position and authority to retaliate and punish Plaintiff for exercising his free speech rights, to wit reporting to IAD a corruption, and these defendants in further of said agreement commenced an internal investigations on the plaintiff when they knew he had not engaged in any conduct that subjected him to an  internal investigation.

106.   Ansel, acting in concert and in furtherance of the conspiracy, commenced among other things a false criminal action against Plaintiff. Ansel accused Plaintiff of crimes when Ansel knew or should have known there was no probable cause Plaintiff had committed crimes. Sullivan in furtherance of the illegal conspiracy with the remaining Defendants then instructed the other co-conspiring police officers to arrest the Plaintiff and take him to the cells and beat him. In furtherance of the conspiracy the Defendants had the video surveillance tape of the assault on the Plaintiff removed from the Police security surveillance system.

107.   Defendant Johnson in furtherance of the conspiracy, and to facilitate the illegal employment practices, custom and policies to discriminate and retaliate against officers, for breaching the "code of silence" for Philadelphia Police Officers, and reporting illegal conduct by police officers, acquiesced to and/or approved Ansel's false arrest and malicious prosecution and/or abusive use of criminal process against Plaintiff.

108.   Johnson in furtherance of the illegal conspiracy failed to stop Ansel when Johnson was capable and obligated to do so; instead, Johnson allowed, approved and acquiesced to the illegal conduct, so as to signal to other officers they should not breach the "code of silence" or report illegal and/or corrupt activities of Philadelphia Police Officers. In that Johnson terminated the plaintiff and upon his being acquitted of all charges would not reinstate him as had been done for officers similarly situated as the Plaintiff but who had not breached to "blue code of silence" rule.

**109.** As a direct and proximate result of the illegal conspiracy Plaintiff suffered injury to his property, person and reputation, to wit, loss of employment pay benefits, and health.

**110.** Plaintiff was denied rights, privileges or immunities as secured under the United States Constitution, Laws and/or Regulations; to wit, speech, property and liberty as secured by the First, Fourth and Fourteenth amendments.

**111.** The Defendants at all time were acting in concert with one another and were motivated by a animus, which continues to date, for the Plaintiff having engaged in protected free speech activities by disclosing to the public that there was corruption in the police department. Which reports continue to date and have been reported to the Federal Bureau of Investigation, which free speech activity has also causes the Plaintiff to not be reinstated to his police position, when similarly situated officers who were acquitted of criminal wrongdoing where reinstated after the acquittal without having to undergo the arbitration process; to wit, Brady and Delacqua.

### COUNT V
### Under 42 U.S.C. 1983

**112.** Plaintiff incorporates by reference 103 to 111 herein as if fully set out herein.

**113.** The intentional conduct of defendant Ansel, Johnson, Norris and the other Defendants, as averred above, was contrary to clearly establish law and violated rights guaranteed to the plaintiff under First, Fourth, Ninth and Fourteenth Amendment to Constitution of the United States, which include but are not limited to the freedom from retaliation for exercising right guaranteed by the Constitution and the freedom against a false arrest, malicious prosecution, and abuse of process.

**114.** Plaintiff was fired from his job on or about January 13, 2003 because of the false charges that the defendants conspired to lodge and pursue against him, and which the defendants knew or should have been know the Plaintiff was innocent of and which charges the defendants knew or should have know would subject the Plaintiff to a unreasonable seizure, false and/or illegal detention, which it did.

**115.**  As a direct and proximate cause of the aforesaid violation of these rights, the plaintiff sustained severe and emotional distress, humiliation, pain and suffering, all of which may be permanent.

## COUNT VI
## Pursuant To 42 U.S.C. 1983

**116.**  Plaintiff incorporates by reference 112 to 115 as if fully set out herein.

**117.**  Plaintiff's complaints and reports concerning other officers concerned important issues of public interest and were protected by the First and Fourteenth Amendments to the Constitution of the United States.

**118.**  The conduct of the named defendants in arresting and prosecuting the plaintiff without legal cause was intended to punish the plaintiff's complaints about illegal activity and was taken in retaliation of the plaintiff's exercise of his rights and duties under the First and Fourteenth Amendments to the Constitution of the United Stated, and deprived him of his constitutional rights as guaranteed by law.

**119.**  The conduct of the named defendants in termination the plaintiff for the alleged violations was intended to punish the plaintiff for his complaints about illegal activity and was taken in retaliation of the plaintiff's exercise of his rights and duties under the First and Fourteenth Amendments to the constitution of the United States, and deprived him of  his constitutional rights as guaranteed by law.

**120.**  The arbitrary, capricious, reckless and intentional conduct of the named defendants in terminating plaintiff for the alleged violations that other persons similarly situated were not similarly disciplined deprived plaintiff of constitutional rights as guaranteed by law, including the Fourteenth Amendment to the Constitution of the United States.

**121.**  As a direct and proximate result of this wrongful conspiracy, arrest, prosecution and retaliation, plaintiff has suffered the loss of income and other benefits related to his job, as well as cause to suffer humiliation and emotional distress.

**122.**     Defendant City of Philadelphia is liable for the wrongful conduct of the name defendants, as the decision makers conceived and implemented a policy and practice of using the internal discipline and reporting system to retaliate against officers who exercised First Amendment and Constitutional rights.

**123.**     Defendant City of Philadelphia is liable for the wrongful conduct of the named defendants' as the decision makers permitted to continue and condoned a longstanding policy and practice of using  the internal discipline and reporting system to retaliate against officers who exercised First Amendment and Whistleblower rights.

**124.**     As a result of defendant's wrongful conduct, plaintiff suffered the harm and damages averred to above.

## COUNT VII
## Pursuant To 42 U.S.C. Sec. 1983,

**125.**     The averments of paragraphs 116 through 124 are incorporated by reference as if fully set forth herein.

**126.**     It is believed and therefore averred that the employer Defendant City of Philadelphia has a policy and practice of condoning, overlooking and acquiescence in the practices as heretofore alleged, and has failed to train and supervise its law enforcement supervisors.

**127.**     Said policy of the City of Philadelphia has caused the damages and injury as heretofore alleged.

**128.**     Defendants individually and collectively and in conspiracy with other employees of the City of Philadelphia, engaged in a course of conduct which was intended to deter the plaintiff from testifying in court and otherwise reporting on matters pending therein related it illegal activities and cover ups by employees of the City of Philadelphia.

**129.**     The deterrence as heretofore alleged was undertaken as part of a conspiracy by and among the defendants and persons employed by the City of Philadelphia in order to deter and retaliate against and to punish the Plaintiff for engaging in the aforesaid protective activities.

**130.**    Said deterrence in the form of intimidation and retaliation caused injury as heretofore alleged, and is in a course of conduct brought against other officers who have spoken out about corruption within the police department. To Wit, John Devore and Lawrence Hammond who spoke out against police corruption and retaliation for speaking out, each having been framed by the City Defendants, an through IA, and each having been fired on false charges, and such charges were brought about by the City misusing IAB.

**COUNT VIII**
**Intentional Infliction of Emotional distress, Mental Anguish**

**131.**    Plaintiff incorporates paragraphs 125 through 130 herein and as though fully stated at length.

**132.**    As a result of the Defendants conduct or omissions Plaintiff suffered fright, nervous shock, mental or emotional disturbances and/or distress which was accompanied by physical injury or impact to include but not limited to up set stomach, irritability, mood swings, depression, shakes, loss of sleep, appetite, and muscle twitches.

**133.**    Defendants' actions and omissions were done with the intent to inflict emotional distress and was extreme or clearly outrageous conduct.

**134.**    Defendants conduct and/or omission was so outrageous in character, and so extreme in degree, as it went beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  More so, Defendants conduct would cause in an average member of the community the arousal of resentment against the employer and/or them or any actor, and lead society to exclaim the conduct as outrageous.

**135.**    Plaintiff's symptoms are severe and include depression, nightmares, stress and anxiety, requiring psychological treatment, and/or ongoing mental, physical, and emotion.

**136.**    Defendants' outrageous nature demonstrates intentional, willful, wanton or reckless conduct, so outrageous as to support a claim for intentional infliction of emotional distress and punitive damages.

**COUNT IX**
**False Arrest**

**137.**    The Plaintiff repeats and re-alleges paragraph 131 to136 as if fully set out herein.

**138.**    Defendant Ansel by arresting the plaintiff when there was no legally adequate basis to believe that plaintiff was or had been in violation of the law of his Commonwealth, acted  without adequate probable or other legal cause and with malicious intent to injure the plaintiff.

**139.**    The plaintiff was caused significant pain, discomfort, and physical distress and psychological trauma as to heretofore alleged as a proximate result of this conduct.

**140.**    The Plaintiff was deprived of his freedom, and such deprivation was the direct and proximate result of defendant Ansel's above described illegal and malicious conduct; thereby, entitling Plaintiff to relief for a false arrest.

**COUNT X**
**Malicious Prosecution**
**42 Pa.Cons.Stat.Ann. § 8351**

**141.**    The Plaintiff repeats and re-alleges paragraphs 137 to 140 as if fully set out herein.

**142.**    By the shoddy and slanted investigation of defendant Ansel, under the supervision of defendants Norris and Johnson, and by the filing of criminal charges against the plaintiff, when there was no legally adequate basis to believe that he was or had been in violation of the law of this Commonwealth, Ansel, Norris, and Johnson acted, without adequate probable or other legal cause and wish malicious intent to injure the plaintiff.

**143.**    As a proximate result of the false and malicious prosecution, which ended favorably for Plaintiff, for he was acquitted, the Plaintiff suffered significant pain, discomfort,  physical distress, psychological trauma and damages, to wit; loss of wages from his employment, value of employment benefits, such as health benefits and pension, and Plaintiff also was required to pay attorney fees to successfully defend against the defendants' false criminal charges.

**COUNT XI**
**Abuse of Process**

**144.**    The Plaintiff repeats and re-alleges paragraphs 141 to 143 as if fully set out herein.

**145.**    The Defendants uses a legal process, to wit; criminal process, against the Plaintiff was to accomplish a purpose for which it is not designed, and made an improper, illegal and perverted use of the legal procedure. That is to say, they resorted to legal process when it was neither warranted nor authorized by law. In that they used criminal process to punish the plaintiff for lawful and protected activities, to facilitate an illegal employment policy, practice and custom to desperately discipline officers and punish them for reaching the "code of silence and reporting illegal and corrupt conduct by white police officers, all of which is their ulterior motive in initiating the legal process against the plaintiff.

**146.**    As a direct and proximate result of the abuse of criminal process, which ended favorably for Plaintiff, for he was acquitted, the Plaintiff suffered significant pain, discomfort, physical distress, psychological trauma and damages, to wit; loss of wages from his employment, value of employment benefits, such as health benefits and pension, and Plaintiff also was required to pay attorney fees to successfully defend against the defendants' false criminal charges.

PRAYER FOR RELIEF

Wherefore, the plaintiff prays the Court enter Judgment for him and against the Defendants on all counts, hold the Defendants jointly and severely liable, and award Plaintiff back and front  wages, economic, statutory, compensatory, punitive and exemplary damages, provide injunctive and/or equitable relief, award attorney fees, costs, and other relief the court deems fitting and just.

Respectfully submitted

Dated: November 21, 2003

Brian M. Puricelli. Esquire
PA. Atty ID No. 61933
691 Washington Crossing Road
Newtown, Pa. 18940
(215) 504-8115